IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MILTON CHARLES VAN NOLAND
and JOY GARNER,

        Plaintiffs,                       No. CIV S-09-2035 MCE DAD PS

    v.

ERIC S. PELLETIER and "GRRR!        ORDER
LIMITED,"

        Defendants.

_____/

        This case came before the undersigned on September 18, 2009, for hearing of plaintiffs' August 18, 2009 motion to remand this action to Nevada County Superior Court. Plaintiffs Milton Charles Van Noland and Joy Garner, both proceeding pro se, appeared on their own behalf. James Patrick Arguelles appeared as counsel for defendants. After hearing the parties' arguments, plaintiffs' motion was taken under submission. For the reasons set forth below, plaintiffs' motion for remand is denied.

        In this order, the undersigned also addresses and denies plaintiffs' motions for recusal of the undersigned, as well as all other unresolved motions appearing on the docket as of the date of this order.

/////

1

PROCEDURAL HISTORY

This action was removed from state court by defendants' Notice of Removal filed July 22, 2009. (Doc. No. 2.) Defendants served a copy of the notice upon the plaintiffs by United States mail on the same date. (Doc. No. 3). On July 27, 2009, plaintiffs filed a motion titled, in part, Motion for Expedited Remand to Nevada County Court. (Doc. No. 7.) The motion was not noticed for hearing, as required by Local Rule 230(a) and (b). On July 30, 2009, plaintiffs filed an ex parte motion for an order shortening time, seeking a hearing before the undersigned at 10:00 a.m. on July 31, 2009, and requesting sanctions against defendants in the form of a dismissal of the notice of removal. (Doc. No. 11.) Plaintiffs' ex parte motion was denied without prejudice to the filing of a properly noticed motion for remand and/or for sanctions. (Doc. No. 12.)

On July 31, 2009, plaintiffs filed a second motion for order shortening time and set that motion and a second motion for sanctions for hearing before the undersigned on August 7, 2009. (Doc. Nos. 13, 14, 15.) By minute order filed August 4, 2009, plaintiffs were notified that their motions were defectively noticed and would not be heard on August 7, 2009. (Doc. No. 16.)

On August 10, 2009, plaintiffs filed a motion for sanctions and properly noticed the motion for hearing on September 11, 2009. (Doc. No. 17.) On August 18, 2009, plaintiffs filed a motion for remand and properly noticed the motion for hearing on September 18, 2009. (Doc. No. 18.) However, the motion for remand was also accompanied by plaintiffs' third motion for an order shortening time, seeking a hearing on the next available date. (Doc. No. 20.) Plaintiffs also filed an unnoticed motion for contempt. (Doc. No. 23.) Plaintiffs' third motion for order shortening time was not granted and is moot.

On September 1, 2009, defendants requested that the court consolidate the hearings set for September 11, 2009, and September 18, 2009, and set both motions for hearing on the later date. (Doc. No. 30.) Plaintiffs objected to the request. (Doc. No. 38.)

On September 1, 2009, plaintiffs filed their first motion for recusal of the undersigned. (Doc. 35.) The unnoticed motion was addressed to the assigned district judge.

On September 2, 2009, defendants filed an ex parte application for an order prohibiting plaintiffs from filing documents in the state court case that has been removed to this court. (Doc. No. 32.) Plaintiffs objected and filed an unnoticed Additional Motion for Sanctions and a second unnoticed motion for recusal of the undersigned, again addressed to the assigned district judge. (Doc. Nos. 36, 37, 39.)

At the hearing of plaintiffs' motion for sanctions on September 11, 2009, the undersigned denied defendants' request to consolidate the two hearings, denied plaintiffs' noticed motion for sanctions without prejudice to renewal in the event the court later found no colorable basis for removal, denied plaintiffs' motion for contempt without prejudice, and denied defendants' ex parte application for an order prohibiting the filing of documents in the state court. (Doc. Nos. 41, 42.)

In violation of Local Rule 230(b) and (d), and without leave of court, plaintiffs continued to file additional briefing in support of their remand motion through September 14, 2009. At the hearing of the motion on September 18, 2009, plaintiffs offered additional authority in support of their arguments. After hearing the parties' arguments, the undersigned took the motion for remand under submission and indicated that the parties should not submit further briefing. The undersigned also advised the parties that, due to the extraordinary volume of cases in this district, no promise could be made regarding the date on which the undersigned would issue an order or findings and recommendations addressing the motion for remand.

Plaintiffs began filing additional briefing on September 23, 2009, and have continued to file motions, requests, and memoranda regarding remand. Within a week after the hearing, plaintiffs filed a demand for an expedited ruling and have filed similar demands regularly since that time. Duplicative motions filed by plaintiffs through January 26, 2010 have been denied. (Doc. Nos. 58, 69.) Plaintiffs filed seven more motions between February 5, 2010

and February 22, 2010, further delaying the issuance of this order. All motions appearing on the docket as of the date of this order will be denied, including plaintiffs' second motion for evidentiary hearing, two motions for leave to file an amended motion for remand, two motions to "alter and amend" the court's February 4, 2010 order, and two motions to compel responses to discovery requests related to jurisdiction. (Doc. Nos. 70 through 77.)

## PLAINTIFFS' MOTIONS FOR RECUSAL

The undersigned turns first to plaintiffs' motions for recusal filed September 1, 2009 (Doc. No. 35), September 8, 2009 (Doc. No. 37), and January 11, 2010 (Doc. No. 61). The motions, which cite no legal authority for recusal, are liberally construed as motions to disqualify pursuant to 28 U.S.C. § 455(a).

The decision regarding disqualification is made by the judge whose impartiality is at issue. Bernard v. Coyne, 31 F.3d 842, 843 (9th Cir. 1994); United States v. Studley, 783 F.2d 934, 940 (9th Cir. 1986). A judge is required to disqualify himself from a case if his impartiality might reasonably be questioned, 28 U.S.C. § 455(a), or if he has a personal bias or prejudice against a party, 28 U.S.C. § 455(b)(1).

Rulings made during the course of a judicial proceeding that are unfavorable to a party or his case ordinarily will not support a bias or partiality claim unless they reveal an extrajudicial source for the ruling or "such a high degree of favoritism or antagonism as to make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 554 (1994). The same standard applies to remarks made during the course of a judicial proceeding. Id. Thus, where the source of alleged bias or prejudice is a judicial proceeding, a litigant seeking recusal must show a disposition on the part of the judge that "is so extreme as to display clear inability to render fair judgment." Id. at 551. Put another way, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. at 555.

In their first motion for recusal, filed on September 1, 2009, plaintiffs contend that the undersigned should have <u>sua sponte</u> remanded this case immediately or should have granted plaintiffs' motion for order shortening time. Plaintiffs contend that failure to remand the case immediately was prejudicial to them. In short, this motion is grounded on the denial of plaintiffs' initial motion for order shortening time and on the decision not to grant plaintiffs' second ex parte motion for an order shortening time. Such adverse rulings do not comprise an adequate basis for recusal. <u>See</u> <u>Leslie v. Grupo ICA</u>, 198 F.3d 1152, 1160 (9th Cir. 1999) ("Leslie's allegations stem entirely from the district court judge's adverse rulings. That is not an adequate basis for recusal.").

Plaintiffs' second motion for recusal was filed just ten days prior to the scheduled hearing of plaintiffs' motion for remand. In this motion, plaintiffs renew their complaint about the denial of their motion for an order shortening time, assert that the undersigned is a friend of one of defendants' attorneys, and contend that the sole reason to delay remand is to permit defendants to violate a state court order that was entered prior to removal. Plaintiffs also complain of the continued involvement of a magistrate judge in this case despite their filing of forms declining to consent to proceed before a magistrate judge. In their third motion for recusal, filed on January 11, 2010, plaintiffs claim that in a conversation with defendants' counsel seven days prior to the filing of the court's January 6, 2010 order, counsel "boasted" of an ex parte communication with the undersigned and told plaintiffs that he had gotten their January 15, 2010 hearing vacated. Plaintiffs also complain of statements made by the undersigned on September 18, 2009, concerning the meaning of the preliminary injunction issued by the state court judge. Plaintiffs question the sincerity of the statements and suggest that the undersigned either has inadequate reading skills or intentionally misrepresented the meaning of the state court's order for the purpose of "protecting" defense counsel.

The contentions in plaintiffs' second and third motions for recusal fail to support disqualification because they are baseless. The undersigned did not have an ex parte

communication with defendants' counsel concerning the motion that was noticed for hearing on January 15, 2010 and is not a "friend of" defense counsel. Nor has the undersigned had any ex parte communication with counsel concerning this case. The undersigned has no bias or prejudice, personal or otherwise, against pro se litigants in general or the plaintiffs in particular. The undersigned hears hundreds of pro se actions every year, maintains impartiality in all such cases, and will continue to do so.

Except for plaintiffs' speculation about ex parte communications and bias, all of plaintiffs' motions for recusal arise from dissatisfaction with decisions and statements made by the undersigned during the course of this judicial proceeding. The decisions and statements challenged by plaintiffs do not support a claim of bias or partiality because they do not reveal an extrajudicial source for any decision and do not reflect an extreme disposition or deep-seated antagonism, nor any animosity, partiality, or inability to render a fair judgment in this case. No reasonable person with knowledge of all the relevant facts and law would conclude that the undersigned's impartiality might reasonably be questioned in this case. All of plaintiffs' motions for recusal will be denied for lack of merit.

With respect to the role of magistrate judges in the United States District Court for the Eastern District of California, plaintiffs are advised that the Clerk of the Court is required to assign each newly opened civil case to a district judge and a magistrate judge pursuant to the court's automated case assignment plan. See Local Rules, App. A(e)(1)-(6). Under Local Rule 302(c)(21), the assigned magistrate judge is required to perform all duties permitted by 28 U.S.C. § 636(a), (b)(1)(A), (b)(1)(B), and (b)(3), "including dispositive motions and matters," in a civil case in which all plaintiffs or all defendants are proceeding pro se. The referral of duties to the assigned magistrate judge in the matters listed in Local Rule 302(c) is automatic pursuant to the

/////

/////

/////

rule, and no order is required.[1] See 28 U.S.C. § 631(a) (providing that the judges of the United States district courts "shall appoint United States magistrate judges" in the numbers and within the judicial districts determined by the Judicial Conference); 28 U.S.C. § 636(b)(4) (requiring district courts to establish rules pursuant to which magistrate judges shall discharge their duties). The decline-to-consent forms signed and filed by plaintiffs merely records their decisions not to choose to proceed before a magistrate judge for all purposes.

As the magistrate judge assigned to this case, the undersigned is required to address all pretrial matters in this case and will continue to do so. The undersigned will hear argument on all motions properly noticed for hearing in accordance with Local Rule 230, will address unnoticed requests and inquiries as appropriate, and will soon conduct a status conference for scheduling purposes. Motions will be resolved by order of the undersigned when the motion is not dispositive in nature, while motions that are dispositive in nature will be addressed in findings and recommendations.[2] The assigned district judge will make the final ruling on all dispositive motions, and trial will be before the assigned district judge.

## PLAINTIFFS' MOTIONS FOR REMAND

I. Standards Applicable to a Motion for Remand

A defendant may remove any civil action from state court to federal court if the district court has "original jurisdiction" over the matter. 28 U.S.C. § 1441(a). Generally, district courts have original jurisdiction over civil actions in two instances: (1) where there is complete diversity between the parties and (2) where a federal question is presented in an action arising under the Constitution, federal law, or a treaty. See 28 U.S.C. §§ 1331 and 1332.

---

[1] A district judge may retain any matter otherwise routinely referred to a magistrate judge by Local Rule 302. "Applications for retention of such matters, however, are looked upon with disfavor and granted only in unusual and compelling circumstances." Local Rule 302(d).

[2] Local Rule 303 addresses the filing of requests for reconsideration of a magistrate judge's orders, and Local Rule 304 addresses the filing of objections to a magistrate judge's findings and recommendations.

7

Where federal jurisdiction is based on diversity, jurisdiction will lie if the matter in controversy at the time of removal exceeds the sum or value of $75,000 and the suit is between citizens of different states. 28 U.S.C. § 1332(a)(1); Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). If the jurisdictional amount in controversy is not facially apparent from the state court complaint, i.e., if the plaintiff does not seek damages or the amount sought is unclear, then the court must look beyond the facts of the complaint and apply the preponderance-of-the-evidence standard. Guglielmino v. McKee Foods Corp., 506 F.3d 696, 701 (9th Cir. 2007); Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).

In order to defeat a motion for remand, the removing defendant must prove by a preponderance of the evidence that the amount-in-controversy requirement has been met. Sanchez, 102 F.3d at 404 ("[T]he defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds" the jurisdictional amount.). In determining whether the jurisdictional requirement has been met in such cases, the court may consider evidence submitted subsequent to the notice of removal, including evidence submitted in opposition to a motion to a remand. Cohn v. Petsmart, Inc., 281 F.3d 837, 840 n.1 (9th Cir. 2002). It is proper to treat the removal petition as if it has been amended to include the relevant information contained in later-filed affidavits and other evidentiary materials. Willingham v. Morgan, 395 U.S. 402, 407 n.3 (1969). However, after the thirty-day removal period, the removal petition cannot be amended to add a new basis for removal jurisdiction, different from the basis or bases stated in the petition for removal. O'Halloran v. Univ. of Washington, 856 F.2d 1375, 1381 (1988).

The defendant seeking removal of an action to federal court has the burden of establishing grounds for federal jurisdiction. California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004); Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988); Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988). Courts must construe the removal statute restrictively so as to limit removal. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th

Cir. 1992). If there is doubt as to the defendant's right of removal, federal jurisdiction must be rejected and remand must be granted. Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996).

The court has an independent obligation to determine whether removal jurisdiction exists before deciding any issue on the merits. Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1116 (9th Cir. 2004); United Investors Life Ins. Co. v. Waddell & Reed, Inc., 360 F.3d 960, 967 (9th Cir. 2004). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). If the district court determines that removal is improper, the court may award the plaintiff "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The court has broad discretion to award costs and fees whenever it finds that removal was wrong as a matter of law. Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1106 n.6 (9th Cir. 2000).

II. Application of the Standards

In ruling on a remand motion, the court ordinarily determines the propriety of the removal from the defendant's notice of removal and the plaintiff's complaint as it existed at the time of removal. If the operative complaint is unclear as to relevant facts or if subject matter jurisdiction is called into doubt in a plaintiff's motion for remand, the court may look to any relevant information presented by the parties.

Here, defendants' Notice of Removal states two grounds for removing this action from state court: (1) diversity jurisdiction and (1) federal question jurisdiction. In their motion for remand, plaintiffs assert that they have not alleged and do not intend to pursue any claims arising from federal patent law. In reliance on plaintiffs' representations, defendants withdrew their assertion of federal question jurisdiction as a ground for removal. (Doc. No. 24, Defs' Opp'n at 6-7.) The issue that remains is whether defendants have demonstrated by a preponderance of the evidence that diversity jurisdiction was present at the time of removal.
/////

Defendants' Notice of Removal asserts the following facts relevant to diversity of citizenship: (1) each plaintiff is a citizen of the State of California; (2) defendant Pelletier is an individual who is a citizen of France working and residing in London, England; and (3) defendant Grrr! Limited is a limited liability company organized and incorporated under the laws of Guernsey with a principal place of business in Guernsey. (Doc. No. 2, Notice of Removal at 2.) Defendants affirmatively assert that "none of the parties in interest properly joined as defendants are citizens of the State of California." (Id.)

With respect to the jurisdictional amount, the Notice of Removal asserts that more than $75,000, not including interest and costs, is in controversy in that defendant Pelletier and other shareholders of Grrr! Limited, formerly known as Grrr! Holdings, have invested approximately $600,000 to date in consideration of, among other things, a transfer by plaintiffs to Grrr! Limited of all intellectual property rights in a product called "Gamerunner," while plaintiffs are seeking a declaration that they are the sole and exclusive owners of all such intellectual property rights. (Id.)

Attached to defendants' Notice of Removal is a copy of plaintiffs' state court pleading with exhibits. Exhibit C to the pleading is described in the Exhibit List as "IP Transfer Contract Dated October 10th, 2008." (Id., Ex. C.) The first page of the contract indicates that the transfer of intellectual property will become irrevocable once Grrr! is fully funded pursuant to a termsheet signed by plaintiff Joy Garner, a representative of the investor, and defendant Eric Pelletier, whereby the investor will inject $1,200,000 into Grrr! once the website is deemed satisfactory. The contract also provides that Joy Garner will have an opportunity to buy back the investor's 10% share of ownership "at a value of USD 200,000."

In their initial motion for remand, plaintiffs denied that their amended complaint asserts any federal claim, asserted that they seek only declaratory relief on contract claims concerning property, denied that there is any amount in controversy, and expressly did not take issue with defendants' assertion of diversity of citizenship. (Doc. No. 7, Pls.' Mot. for Expedited

Remand at 1-4.)  In their noticed motion for remand, plaintiffs take the same positions, although this motion does not appear to address the issue of the citizenship of the parties.  (Doc. No. 18.)

In support of their opposition to plaintiffs' motions to remand on the issue of diversity jurisdiction, defendants offered a declaration executed on August 25, 2009 by defendant Pelletier.  Therein, defendant Pelletier declares as follows:  he is a citizen of France working and residing in London, England; Grrr! is a limited liability company organized and incorporated under the laws of Guernsey with a principal place of business in Guernsey; Grrr!'s sole asset is the intellectual property at issue in this litigation; the intellectual property is worth substantially more than $75,000.  (Doc. No. 25 at 1-2.)  The latter statement is supported by a document titled "Grrr! Limited Shareholders and Share Capital as of 1st May 2009," which shows that outside investors agreed to invest approximately $1,250,000 in return for a 29.5% stake in Grrr!, which suggests that the total value of the intellectual property exceeds $4 million.  The same document supports declarant's assertions that the investors had already invested $521,135.64 as of May 1, 2009, and that they had invested approximately $140,000 more between May 1, 2009 and August 25, 2009.

In reply to defendants' opposition, plaintiffs offered no evidence but argued for remand on the following new theory:  this action is about property over which the state court had already exercised in rem jurisdiction, thereby depriving the federal court of jurisdiction. Plaintiffs did not demonstrate, however, that the state court exercised control over plaintiffs' intellectual property when it issued an injunction that prohibited defendants from filing assignments or other papers affecting ownership, prosecution, or abandonment of the intellectual property at issue and from making any statements of claim to ownership or of any rights to the property.  Unlike the cases described in Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 465-66 (1939) – cases "where property has been actually seized under judicial process" and suits "brought to marshal assets, administer trusts, or liquidate estates," i.e., suits where the court must be in control of the property – this is not a case in which a court must assume control of

plaintiffs' intellectual property for purposes of adjudicating plaintiffs' claims. Moreover, the cases cited by plaintiffs involve concurrent in rem proceedings in state and federal courts, rather than cases in which a single state court action was removed to federal court and no concurrent action continued in the state court. See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 818-19 (1976).

After plaintiffs' motion for remand was heard, plaintiffs filed a document characterized as a request for judicial notice of an alleged "admission of non-diversity" by the defendants. (Doc. No. 47.) Therein, plaintiffs theorized that since defendants' "entire defense of the suit" is premised on "enforcement of prior conditional contracts" under which plaintiffs would own 70% of the entity, then plaintiffs are the "primary owners" of Grrr! Limited and, as residents of California, defeat diversity of citizenship. Plaintiffs elaborated on this theory in subsequent filings, arguing that the entity Grrr! Limited is a limited liability company and the citizenship of an unincorporated business for purposes of diversity jurisdiction consists of the citizenship of all of its members. Plaintiffs provided a copy of a page from the Guernsey Company Registry showing that GRRR! LIMITED is a Guernsey Registered Company, "Non Cellular" in type, with liability "Limited by Shares." (Doc. No. 49, Pls.' Memo. of Law in Supp. of Remand, Ex. A.)

In response to plaintiffs' new theory attacking diversity of citizenship, defendants provided relevant points and authorities based on Guernsey law. Defendants agree that a limited liability company formed under United States law is treated as a citizen of each member's place of citizenship but argue that foreign limited companies must be categorized in accordance with foreign law to determine whether an entity is a legal "person" under the law of the jurisdiction which created it. (Doc. No. 57, Def'ts' Response at 3, citing Cohn v. Rosenfeld, 733 F.2d 625, 630 (9th Cir. 1984), and Lear Corp. v. Johnson Elec. Holdings Ltd., 353 F.3d 580, 583 (7th Cir. 2003).)

/////

Defendants cite Guernsey Companies Law § 1, which provides that "[a] company is a legal person, separate from its members, which comes into existence upon incorporation and continues until it is removed from the Register of Companies." (Id. at 4.) Defendants assert that all Guernsey non-cellular companies are separate juridical persons under Guernsey law, that a Guernsey non-cellular company is deemed incorporated upon issuance of a Certificate of Incorporation, and that Guernsey law requires each Guernsey non-cellular company to have Articles of Incorporation. Defendants provide a copy of Grrr! Limited's Memorandum of Incorporation, which reflects that the entity was incorporated on December 29, 2008, and that Grrr! Limited shareholders, like shareholders in California corporations, are not generally liable for the company's debts and that their liability is limited by the amount, if any, that is unpaid on the shares held by them. Defendants conclude that, as a Guernsey non-cellular company limited by shares, it is the functional equivalent of a corporation under United States law and should be treated as a corporation for diversity purposes. (Id. at 4-5.)

Defendants' contentions are supported by a declaration executed on December 29, 2009, by defendant Pelletier and an affidavit sworn to by Peter Andrew Harwood[3] on December 30, 2009. (Doc. Nos. 57-2 & 57-3.) These documents and their attachments provide detailed information concerning legal aspects of Guernsey non-cellular companies. Defendants' evidence establishes that such companies, including defendant Grrr! Limited, function like corporations rather than like limited liability corporations created under United States law. Thus, Grrr! Limited must be deemed a separate citizen under Guernsey law, and it is the citizenship of Grrr! Limited as a corporation that is relevant for jurisdictional purposes, rather than the citizenship of each shareholder.

/////

---

[3] Peter Andrew Harwood is a partner of the firm Ozannes, a Guernsey law firm, has been qualified as an advocate under Guernsey law since 1982, and has been a partner of the firm since 1983. (Doc. No. 57-2 at 2.) The firm has been retained as counsel for defendant Pelletier to give advice and submit a declaration describing Guernsey Companies Law. (Id.)

13

In reply, plaintiffs mounted yet another entirely new challenge to defendants' assertion of diversity jurisdiction. Despite the fact that defendants asserted in their notice of removal and have asserted consistently thereafter that Grrr! Limited is incorporated under the laws of Guernsey with a principal place of business in Guernsey, plaintiffs now argue for the first time that defendant Grrr! Limited's principal place of business is in California, which, if true, would defeat diversity jurisdiction. (Doc. No. 59 at 1.)

Plaintiffs argue in this regard that a majority of Grrr! Limited's business activity has taken place in California, making California the predominant place of operations and the nerve center of managerial activities for the corporation. Relying on the fact that the sole asset of Grrr! Limited is plaintiffs' product Gamerunner, plaintiffs allege that all prototypes, hardware, software, inventories, related technologies, market research, websites, testing equipment, and other items have always been located in California. Plaintiffs also argue that the only noticed company meeting ever held by Grrr! Limited took place in Sacramento on December 8-9, 2008 and the next meeting was planned to occur in San Francisco in March 2009. Plaintiffs deny that any business activities have taken place in Guernsey but fail to offer evidence to that effect.

In turn, defendants offer a declaration executed by defendant Pelletier on January 22, 2010, in his personal capacity and as chairman of Grrr! Limited. (Doc. No. 67-2 at 1.) Defendant Pelletier declares as follows: Grrr! Limited was incorporated on December 29, 2008 but has done almost nothing as a corporation since incorporation due to plaintiffs' failure to turn over the intellectual property to Grrr! Limited and commencement of litigation; Grrr! Limited does not have and has never had any production, operations, or sales and, as a result of its corporate inactivity, has remained a "start-up" company, with its sole corporate activity limited to the banking, legal, and financial functions generally applicable to start-up companies; all of those corporate activities have taken place in Guernsey; Grrr! Limited's principal corporate offices are located in Guernsey; the two companies that act on behalf of Grrr! Limited are located in Guernsey; its banking relationships are located in Guernsey; all of its financial and shareholder

records are located and maintained in Guernsey; Guernsey is the only place where Grrr! Limited has ever had substantial business activity. Defendant states that the purpose of incorporating Grrr! Limited was to transfer plaintiffs' intellectual property to that entity, which would manage the property and arrange for manufacturing, sales, development, and web hosting mostly in places other than California. According to declarant, it was intended that banking, decision-making, and finance would take place in Guernsey, marketing would take place in Paris, development would take place in California, although patent counsel would be engaged in New York, production would take place in China, web design would occur in Chicago, and web hosting would be based in Ireland. Except for banking, decisionmaking, and finance, none of those events came about for Grrr! Limited as an entity.

For purposes of 28 U.S.C. §§ 1332 and 1441, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). It is undisputed that Grrr! Limited was incorporated in Guernsey, and defendants have demonstrated by a preponderance of the evidence that, to the extent that the entity ever had a principal place of business, it was in Guernsey. Plaintiffs' description of purported Grrr! Limited business activity in California is unpersuasive because most of the activity preceded the incorporation of Grrr! Limited on December 29, 2008 or cannot be considered business activity of Grrr! Limited due to plaintiffs' failure to turn over to Grrr! Limited the intellectual property that was to be its sole asset.

The court has considered all of the parties' arguments, including arguments not discussed in this order, and has carefully considered all relevant evidence submitted through February 10, 2010. The court finds that diversity of citizenship is present. Moreover, based upon the declarations and exhibits submitted by defendants the court also concludes that defendants have borne their burden of demonstrating by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000. Accordingly, plaintiffs' motions for remand will be denied.

# FURTHER PROCEEDINGS

Rulings by magistrate judges on general pretrial matters that do not require findings and recommendations "shall be final if no reconsideration is sought from the Court within fourteen (14) days calculated from the date of service of the ruling on the parties, unless a different time is prescribed by the Magistrate Judge or the Judge." Local Rule 303(b).

> A party seeking reconsideration of the Magistrate Judge's ruling shall file a request for reconsideration by a Judge and serve the Magistrate Judge and all parties. Such request shall specifically designate the ruling, or part thereof, objected to and the basis for that objection. The request shall be captioned "Request for Reconsideration by the District Court of Magistrate Judge's Ruling."

Local Rule 303(c). Opposition to such a request shall be served and filed within seven days after service of the request for reconsideration. Local Rule 303(d). Local Rule 230 does not apply to requests for reconsideration under Rule 303. Local Rule 303(e). Oral argument is not allowed unless the assigned district judge specifically calendars such argument either at the request of a party or sua sponte. Id. A request for reconsideration that is untimely or not properly captioned may be denied.

Upon the district judge's disposition of any request for reconsideration of this order, the undersigned will set the case for a Status (Pretrial Scheduling) Conference pursuant to Rule 16 of the Federal Rules of Civil Procedure.

IT IS ORDERED that:

1. Plaintiffs' motions for recusal filed September 1, 2009 (Doc. No. 35), September 8, 2009 (Doc. No. 37), and January 11, 2010 (Doc. No. 61) are denied;

2. Plaintiffs' July 27, 2009 motion for expedited remand (Doc. No. 7) is denied;

3. Plaintiffs' August 18, 2009 motion for remand (Doc. No. 18) is denied;

4. Plaintiffs' August 18, 2009 motion to shorten time (Doc. No. 20) is moot;

5. Plaintiffs' September 2, 2009 motion for sanctions (Doc. No. 36) was withdrawn by plaintiffs in open court on September 18, 2009;

6. Plaintiffs' February 5, 2010 second motion for evidentiary hearing (Doc. No. 70) is denied;

7. Plaintiffs' February 8, 2010 motion for leave to file an amended motion for remand (Doc. No. 72) is denied;

8. Plaintiffs' February 10, 2010 motions to alter and amend the court's order filed February 4, 2010 (Doc. Nos. 73 and 74) are denied;

9. Plaintiffs' February 10, 2010 motion for leave to file an amended motion for remand (Doc. No. 75) is denied; and

10. Plaintiff's February 22, 2010 motions to compel discovery responses (Doc. Nos. 76 and 77) are denied.

DATED: February 24, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1\orders.pro se\vannoland2035.oah091809